REQUESTED BY: Dear Senator Haberman:
You have requested our opinion on four questions which relate generally to LB 605 as amended. We have previously issued two opinions in LB 605. They are Opinion No. 204 to Senator Venditte, dated January 30, 1980, which opinion dealt with LB 605 in its original form, and Opinion No. 205, dated January 30, 1980, to you which dealt with proposed amendments to LB 605. Those proposed amendments were subsequently adopted. Subsequently LB 605 was amended on the floor on March 5, 1980, in three particulars, and on March 7, 1980, in one particular. As it now stands, LB 605, Section 1 provides that:
 "When three or more persons are participating in a course of disturbing the peace, a peace officer may order the participants in the immediate vicinity to disperse. Any person who refuses or knowingly fails to obey such order shall be guilty of a Class II misdemeanor."
Section 2 establishes an affirmative defense which is substantially in the form that it existed in the committee amendments to LB 605. Section 3 is an emergency clause.
In your first question you ask whether striking the definition of disorderly conduct contained in the committee amendments and substituting in its place the term `disturbing the peace' as set out above, changes our previous opinion with respect to the constitutionality of this legislation. In our Opinion No. 205 we stated:
 ". . . Under the amendment as drafted an act is required. Most of the overbreadth attacks have related to protected free speech as opposed to acts. Therefore, we believe it could be successfully defended."
Disturbing the peace is defined at section 28-1322(1), R.S.Supp., 1978. That subsection provides:
 "Any person who shall intentionally disturb the peace and quiet of any person, family, or neighborhood commits the offense of disturbing the peace."
This section is substantially similar to section 28-818 as it existed prior to the adoption of the Nebraska Criminal Code. The Nebraska Supreme Court in State v. Coomes,170 Neb. 298, 102 N.W.2d 454 (1960), stated in essence that a breach of the peace, a common law crime, is the same as the statutory crime of disturbing the peace. In that same case the Supreme Court stated that in order to charge the crime the information must specify what the defendant did that willfully disturbed the peace and quiet of some person, family or neighborhood; where the act took place; and what person, family or neighborhood was disturbed. A constitutional question as to the validity of the statute was raised in that case but not reached.
As we indicated in our previous opinions, a constitutional attack on statutes of this type is generally based upon a First Amendment claim. Such claims would relate to the exercise of religion, the freedom of speech or press, or the right to peaceably assemble and petition government. The United States Supreme Court has construed statutes of similar import in a large number of cases. In Lewis v. NewOrleans, 415 U.S. 130, the Supreme Court limited a breach of the peace complaint to one involving fighting words rather than just words. Other cases have similarly construed statutes of the character here under question to be limited to certain specific circumstances. Thus, the statutory definition provided in the Criminal Code, coupled with the construction placed upon that statute by court interpretations, would provide a sufficient set of standards to guide the discretion of peace officers. To that extent our opinion previously rendered would stand with respect to the new language adopted on the floor of the Legislature.
In your second question you ask whether the language now in the bill could be defended from a constitutional attack based on overbreadth since the language now utilized encompasses speech as well as acts. In Opinion No. 205 we indicated that the necessity of an act would be sufficient to defend it from an overbreadth attack. In the present version which is clothed with the interpretations of case law there are sufficient standards and guidance that a prosecution under this section would probably be defensible depending, of course, upon the exact factual situation. The statute is broad enough that conceivably a complaint could be filed which would charge some violation which would run afoul of constitutional protections involving either free speech, peaceably assembly, or practice of religion. While we cannot say such specific attacks would be unsuccessful, we are of the opinion that the statute on its face would withstand a constitutional attack on that basis. This is particularly true, we believe, in light of the specificity required by the Supreme Court in State v. Coomes. We also believe that should the statute come before our Supreme Court, our court, would adopt those limiting constructions heretofore approved by the United States Supreme Court in cases such as Cox v. Louisiana, 279 U.S. 536.
In your third question you ask:
 "In your opinion, do the latest adopted amendments sufficiently describe the conduct to be prohibited so as to effectively guide law enforcement in carrying out the provisions of the act as clearly as the original provisions of Req. 2115."
We must decline to express our opinion on the relative merits of the two proposed enactments. A policy decision is required to be made either to adopt the language proposed in Request No. 2115 or the language as it now exists after floor action by the Legislature. This is a policy decision. It is our duty to advise you as to the constitutionality of the language of statutes which have been proposed. In this instance both sets of proposals are, in our opinion, constitutional. Which one should be adopted in a decision that must be made by the Legislature?
In your fourth question you ask whether the latest amendments increase or decrease the likelihood of civil liability being imposed for acts of peace officers attempting to enforce the provisions. To answer this question would require speculation on our part. A limited immunity is granted to peace officers in the execution of their office. This immunity is known as good faith defense. If they act in a good faith belief that their action is lawful, they would be immune from liability. To that extent a specific factual situation would be necessary before one could make a determination of the relative probability of liability give the different provisions. Obviously, the broader the authority granted to a peace officer, the broader the area in which he may act in good faith. However, the test is how the officer acted in the specific circumstances under consideration. Since speculation would be required to answer your question, we must decline to give you our opinion on the relative merits of the proposed bills.